1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

*Attorneys for Plaintiff*

Additional Counsel for Plaintiff
Listed Below

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA MADRIGAL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200,** *et seq.* |

**FRONTIER LAW CENTER**
Adam Rose (210880)
adam@frontierlawcenter.com
Manny Starr (319778)
manny@frontierlawcenter.com
23901 Calabasas Rd., #2074
Calabasas, CA 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

Plaintiff Alicia Madrigal ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, brings this action against Defendant Volkswagen Group of America, Inc. ("Defendant," "VW"), upon information and belief, except as to her own actions, the investigation of his counsel, and the facts that are a matter of public record, and alleges as follows:

## INTRODUCTION

1.     This class action arises out of VW's failure to accurately and comprehensively identify the vehicle parts that should properly be classified as emissions warranty parts and high-cost emissions warranty parts under California's emission control system warranty requirements pursuant to (California Code of Regulations ("CCR"), Title 13, Section 2035 *et seq*., (the "California Emissions Warranty" or "Emissions Warranty") and covered under the Emissions Warranty for 7-years and 70,000 miles.

2.     This action specifically addresses, and is limited to, the engine pistons, and the piston rings affixed to the pistons (collectively referred to as the "Piston" or "Pistons") installed inside the internal combustion engines of the Class Vehicles.  VW failed to identify the Piston in the Class Vehicles as a "high-priced" emission part entitled to extended warranty coverage under the California Emissions Warranty for 7-years and/or 70,000 miles.

3.     As explained herein, in 1990, the California Air Resource Board ("CARB") submitted, and the Legislature adopted, California Code of Regulation §§ 1900, *et seq*., which requires all vehicle manufacturers to ensure that any new motor vehicle sold in California is accompanied by a California Emissions Warranty.

4.     Pursuant to California Code of Regulation § 1900, *et seq*., vehicle manufacturers that distribute vehicles in California equipped with internal combustion engines are required to provide a 3 year/ 50,000 California emissions warranty for all parts whose failure: (1) can cause the check engine light ("MIL")

to illuminate, (2) increases regulated emissions, or (3) causes a vehicle to fail an inspection established under section 44012 of the Health and Safety Code. The warranty shall be extended to 7 years or 70,000 miles for all emissions-related parts that are also "high-priced" parts as determined by the Regulations.

5.      As detailed further below, including in a Declaration provided by CARB (the CARB Declaration"), CARB has determined that defects which cause illumination of the MIL, are covered under the 7 years or 70,000 miles California Emissions Warranty for high-priced emissions related parts. This is because, pursuant to Title 13, Section 1968.2, the MIL is not supposed to illuminate unless the vehicle's onboard diagnostic system ("OBDII" or "OBD2") has detected a defect which increased regulated emissions.

6.      Furthermore, defects which cause illumination of the MIL would result in the vehicle failing a California smog check. Thus, defects which either have caused or will cause a vehicle to fail a California smog check also increase regulated emissions.

7.      Piston defects in Class Vehicles can cause the MIL to illuminate, increase regulated emissions, and will cause Class Vehicles to fail an inspection established under section 44012 of the Health and Safety Code.

8.      Moreover, Pistons are expressly identified as emissions-related parts on the "Emissions-Related Parts List," adopted by CARB on November 4, 1977, as last amended June 1, 1990 (described below).

9.      Accordingly, Pistons are emission-related parts entitled to coverage under the California Emissions Warranty.

10.     In addition, the Pistons are "high-priced" parts whose repair or replacement is entitled to extended coverage under the California Emissions Warranty for 7 years or 70,000 miles because the parts and labor cost to diagnose and replace Pistons in Class Vehicles exceeds the minimum price threshold for determining a "high-priced" warranted part under the Regulations.

11.    VW has unilaterally limited the parts that should be covered under the Emissions Warranty and failed to cover the Piston as a "high-priced" warranted part in order to minimize VW's warranty exposure.

12.    By this action, Plaintiff primarily seeks an order declaring that, *inter alia*, VWs current and past practices with respect to the parts as described herein do not comply with the CCRs and with the California Emissions Warranty and an injunction to remedy VW's misconduct.  Ancillary to that relief, Plaintiff also seeks reimbursement for, *inter alia*, all out of pocket costs paid for repairs to the Piston that should have been covered under the 7-year 70,000-mile and California Emissions Warranty and payment of all repairs which are needed and should have been covered under VW's California emissions warranty, for which VW has refused to provide coverage, namely the replacement of the engine Pistons.

## BACKGROUND

13.    For decades, VW has been in the business of importing and distributing VW vehicles in the State of California, with the intent to sell VW vehicles to consumers in California. These vehicles have been sold and distributed by VW under the brand names of Audi, Bentley, Bugatti, Lamborghini and Volkswagen. As such, the VW vehicles have been subject to state and federal regulations regarding both emissions standards and regarding VW's obligation to provide consumers with warranties relating to emissions parts. This lawsuit is brought against VW relating to its unfair business practices relating to the Audi, Bentley, Bugatti, Lamborghini and Volkswagen brand vehicles.

14.    Specifically, dating back over 20 years, California Code of Regulations, Title 13, Section 2035, *et seq*., entitled "Emission Control System Warranty Requirements for 1990 and Subsequent Model Year Passenger Car, Light-Trucks, and Medium-Duty Vehicles and Engines ("the CCR") has required VW to identify to the California Air Resources Board ("CARB") all vehicle parts that are "high-priced" "warranted parts," and has required VW to provide a 7-year

70,000-mile warranty to California consumers relating to all "high-priced" "warranted parts." This provision is sometimes referred to as the "High-Cost Emissions-Related Parts Warranty" or the "California Emission Control System Warranty."

15.    The CCR very clearly defines the methodology that VW is required to use in order to identify which parts should be covered as emissions parts, and which parts should be covered by the 7-year 70,000-mile warranty.

16.    Pursuant CCR Section 2035, with regard to 1990 and subsequent model year vehicles, a "warranted part" is defined as, "any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

17.    Furthermore, CCR Section 2037(b) states: "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:

(1)    Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and

(2)    Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs; and

///

///

(3)     Free from defects in materials and workmanship which cause the failure of a warranted part described in section (c) below for seven years or 70,000 miles, whichever first occurs."

18.     California Code of Regulations Section 2037(c) deals with "high-priced warranted parts" under the California Emission Control System Warranty and states:

(1)     Each manufacturer shall identify in its application for certification the "high-priced" warranted parts which are:

    (a)     For 1990 through 2007 model year vehicles: [i] included on the Board's "Emissions Warranty Parts List" as last amended February 22, 1985, incorporated herein by reference, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3);

    (b)     For 2008 and subsequent model year vehicles: [i] subject to coverage as a warranted part in section (b)(2) above, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3).

(2)     The replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis. The cost shall be that of the highest-cost metropolitan area of California.

(3)     The cost limit shall be calculated using the following equation:

Cost limit n = $300 x (CPI (n-2) / 118.3)

Cost limit n is the cost limit for the applicable model year of the vehicle rounded to the nearest ten dollars.

///

///

///

///

19.    In summary, any part that either effects a vehicle's emissions, or causes a vehicle's on-board diagnostic malfunction indicator light to illuminate is, for the purpose of determining coverage under the CCR, considered a "warranted part." If a part is a "warranted part," the part shall have a 3-year 50,000-mile warranty.

20.    However, if the part is a "high-priced" warranted part, as defined by 2037(c) of the CCR, the part, the labor cost of diagnosing the part failure, and the labor cost of replacing the part shall have a 7-year 70,000-mile emissions warranty pursuant to the High-Cost Emissions-Related Parts Warranty.

21.    As part of the certification process for a vehicle, the manufacturer determines which parts it considers to be "emissions parts" and submits a list of those parts to CARB.  Section 2037(c).  At the same time, the manufacturer also identifies the parts from the emissions parts list that the manufacturer has determined, based on the cost calculation set forth in the CCR, exceeds the cost limit and therefore are "high-priced" parts entitled to extended 7-year/70,000-mile coverage. VW has an obligation to provide 7-year/70,000-mile coverage under the California Emissions Warranty for all "high-priced" emissions-related components.  VW is supposed to determine if a component is high-priced by analyzing the cost to the consumer to diagnose and repair the component, including what the consumer would pay for parts and labor.

22.    At all times herein relevant, for each new motor vehicle intended to be distributed by VW in the State of California, at the time of distribution, VW has purported to accurately notify CARB of the parts which should be covered as emissions related parts, also known as warranted parts. Furthermore, at all times herein relevant, for each new motor vehicle intended to be distributed by VW in the State of California, at the time of distribution, VW has purported to accurately notify CARB of the parts which should be covered under the 7-year 70,000-mile California emissions warranty.

23.     Plaintiff's theory does not depend on the premise that CARB was deceived by the information that VW submitted, or that CARB ever expressed a concern about VW's classification of components as being covered by the California Emissions Warranty. Plaintiff is not accusing CARB of mismanagement or blaming CARB for VW's inaccuracy. VW alone is responsible for selecting and identifying to CARB the parts that VW has unilaterally identified as being covered by the California Emissions Warranty, as part of its application for vehicle certification. That list may be correct as far as CARB may know. But, as Plaintiff alleges, the list of parts VW submitted to CARB was incomplete, as evidenced by Plaintiff's own experience.

24.     By asserting the claims herein, Plaintiff is not asking for judicial assumption of the role of CARB. To the contrary, Plaintiff is seeking for the Court to perform an ordinary judicial function, namely, to grant relief under the UCL for business practices made unlawful by statute and to determine, by using the Court's basic factfinding and statutory interpretation litigation tools, whether VW is complying with the California Emissions Warranty law or flouting it systematically. Further, to the extent that there is any doubt as to whether this Court would be assuming, interfering with, or usurping the functions of CARB, the CARB Declaration makes CARB's intentions clear. The CARB Declaration states that the Declaration is provided "for the sole purpose of educating the Courts about CARB's interpretation and implementation of California's warranty requirements." The CARB Declaration confirms that CARB does not consider this matter exclusively within its purview and expects the Court to adjudicate these issues.

25.     Further, VW has engaged in a systematic business practice of omitting from the VW warranty booklets provided to owners and lessees at the time of sale or lease, and in resources provided by VW to its dealerships both at the time of sale or lease and afterwards, that the Piston in the Class Vehicles is a

"high-priced" warranted part that should be covered under the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty. Thereafter, when VW vehicles are presented by consumers to VW authorized repair facilities for repair, VW fails to provide coverage under the 3-year 50,000-mile California emissions warranty or the 7-year 70,000-mile California emissions warranty for all of the repairs that should be covered under said emissions warranties. As a result, California consumers have to pay out of pocket for these repairs which, by operation of California law, should be paid for by VW.

26.    The failure by VW to properly identify the Piston as a warranted part and "high-priced" warranted part under the CCR violates California Business and Professions Code section 17200, *et seq.* (the "UCL") and is intended to minimize the amount of money that VW has to pay out in warranty claims.

## JURISDICTION AND VENUE

27.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state different from that of Defendant VW; and (ii) aggregating the claims of individual Class members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) VW is not a state, state official, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

28.    This Court has personal jurisdiction over VW because VW has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

///

29.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because VW transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.  Venue is also proper in this judicial district because a substantial portion of the transactions and occurrences that form the basis of Plaintiff's action occurred in this county. Madrigal had the subject vehicle diagnosed by a factory authorized VW dealership located in Ventura County, wherein it was identified that repairs to parts that should be covered under the California Emissions Warranty were needed, and wherein warranty coverage was denied by VW.

## PARTIES

30.    Plaintiff Alicia Madrigal ("Madrigal") is, and at all times relevant hereto has been, a resident and citizen of the State of California, County of Ventura.

31.    VW was and is, upon information and belief, a New Jersey corporation, headquartered in Virginia, doing business in California.  At all times relevant hereto, VW has sold Vehicles, including the Class Vehicles, in the State of California.  VW houses the U.S. operations of a worldwide family of brands including Audi, Bentley, Bugatti, Lamborghini and Volkswagen.

32.    The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.

33.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of VW at all relevant times.

34.    Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of

said Defendants, along with the appropriate charging allegations, when the same have been ascertained, as may be necessary.  Each reference in this Complaint to "VW" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

35.    Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## PLAINTIFF'S FACTS

36.    Madrigal purchased and is the owner of a 2017 Audi Q7, vehicle identification number WA1AAAF73HD030426 ("Madrigal Vehicle"). The Madrigal Vehicle was originally distributed as a new vehicle in the State of California and was originally registered in the State of California.  The Madrigal Vehicle was placed into service as a new vehicle on December 19, 2016.  The Audi brand vehicle is a vehicle distributed by VW.  VW provides a California emissions warranty and new car warranty to buyers and lessees of Audi brand vehicles.

37.    Madrigal has had the Madrigal Vehicle serviced at DCH Audi Oxnard ("DCH"), located at 1600 East Ventura Boulevard, Oxnard, California 93036 for the last several years. Madrigal had complained that the Madrigal Vehicle was leaking oil and/or consuming oil. It is believed that Madrigal made her first complaint that the Madrigal Vehicle was leaking or consuming oil on February 4, 2020.  DCH began to monitor the situation, and commenced an oil consumption test, in order to determine why the Madrigal Vehicle's engine was presenting with a low oil level.  On May 25, 2022, at 53,321 miles, DCH determined that the Madrigal Vehicle was consuming oil, and that the cause of the Madrigal Vehicle consuming oil was that the Madrigal Vehicle's engine pistons were defective and required replacement.  At the time of the May 25, 2022

diagnosis, the Madrigal Vehicle had been driven less than 70,000 miles and had been in service less than 7 years.

38.     Madrigal paid out of pocket  for the diagnosis of the engine Piston defect, relating to the repair attempt that commenced on May 25, 2022.  Further, VW has refused to pay for the repairs to the engine Pistons. As a result, the Madrigal Vehicle needs to undergo repairs relating to the engine Pistons which will cost several thousand dollars.

39.     The cost associated with the diagnosis and repairs relating to the Piston should have been covered and paid for by VW under the 7-year 70,000-mile California Emissions Warranty. This is because the Piston in Class Vehicles is a part covered by the California Emissions Warranty, because a defect in the Piston will cause the Class Vehicles to fail a smog check, because a defect in the Piston can cause the check engine light to illuminate, and because a defect in the Piston will increase the Class Vehicles' regulated emissions. Further, pursuant to California Code of Regulations section 2037(c), the Piston should have been identified as a high-priced emissions part, and the parts relating to that repair should have been covered under section 2037(c) because the cost to replace even one of the defective Pistons of the Madrigal Vehicle exceeded the cost threshold.

40.     On information and belief, VW's failure to include the Piston as a covered part under the California emissions warranty, and VW's failure to identify the Piston as a high-priced part, was an intentional omission by VW designed to limit VW's warranty exposure and is just one example of VW's scheme to fail to properly and comprehensively identify all of the parts that should be identified as warranted parts covered for 3-years or 50,000-miles under the California emission warranty, and as high-priced warranted parts and covered for 7-years or 70,000 miles under the California Emissions Warranty.

///

///

41.    VW's application of the CCR to the Piston is incorrect.  The details
of how VW actually applied the CCR formula with respect to the Piston are
exclusively within VW's possession.

42.    The reason that Plaintiff was charged for said repairs was not the
result of an individual issue relating to the dealership, or an oversight by the
dealership in failing to identify the repairs as repairs that should have been
covered under the 7-year 70,000-mile California emissions warranty. Rather,
Plaintiff was charged for said repairs because of VW's uniform and systematic
business practice of intentionally refusing to identify in the VW warranty booklet,
and in resources provided to its dealerships, that the Piston is a high-priced
warranted part under California law in order to limit the amount of warranty
claims paid by VW.

## THE CARB DECLARATION

43.    CARB has provided a Declaration from Allen Lyons, (who was the
Chief of the Emissions Certification and Compliance Division of CARB when the
Declaration was provided) regarding the California Emissions Warranty (the
"CARB Declaration") "for the sole purpose of educating the Courts about
CARB's interpretation and implementation of California's warranty
requirements." The CARB Declaration sets forth CARB's interpretation of certain
of the foregoing CCR provisions, including how to define a "warranted part" for
purposes of the California Emissions Warranty and how to properly determine
whether an emissions part is also a "high-priced emissions part" entitled to
extended warranty coverage for 7 years and 70,000 miles.

44.    The CARB Declaration states, in relevant part, that "warranted parts"
under the California Emissions Warranty "include any components that can or are
required to illuminate the OBD Malfunction Indicator Light (MIL) in the event of
a malfunction, even if the primary function of the component is not emission
control, within the warranty period. (Cal. Code Regs., tit. 13, § 2037, subd.

(b)(2).) The MIL is a light located on the driver's side instrument panel that, when illuminated, is amber in color and displays "Check Engine/Powertrain," "Service Engine/Powertrain Soon," or the International Standards Organization (ISO) engine symbol; the MIL illuminates to notify the driver of detected malfunctions of OBD-monitored emissions systems on the vehicle. Cal. Code Regs., tit. 13, § 1968.2, subds. (a), (d)(2.1.1) & (2.2).

45.    The CARB Declaration further provides that "When calculating the cost of labor portion of the replacement cost equation, in order to determine if a part is a "high-priced" warranted part for the purposes of California Code of Regulations, title 13, section 2037, subdivision (c), manufacturers first calculate the amount of time it would take to diagnose and repair or replace the part (the labor hours). A dollar amount is then attributed to the number of labor hours to come up with a cost of labor for each part. In doing this, manufacturers should use the labor hours and associated costs that would be charged to consumers to perform any required diagnosis and repairs to or replacement of the part, not the labor hours that manufacturers' service dealerships are allowed to charge manufacturers."

46.    As further alleged below, VW has systemically failed to follow the foregoing methodology specifically with respect to the Piston. Defendant has an obligation under the California Emissions Warranty to identify all emissions-related vehicle components for which there should be warranty coverage. As a custom and practice, VW has interpreted this obligation too narrowly, resulting in VW wrongfully failing to identify the Piston as an emissions-related vehicle component in the Class Vehicles under the California Emissions Warranty. The CARB Declaration clarifies the standard for determining whether a warranted part is emissions-related. According to CARB, as set forth above, any vehicle part that causes the MIL to illuminate and/or affects regulated emissions is an emissions-

related part under the California Emissions Warranty law. This is not the standard that VW has been using.

47.    Based on the CARB Declaration, VW is required to provide coverage for all components whose failure: (1) affects any regulated emission from a motor vehicle; and, (2) can *or* are required to illuminate the on-board diagnostic ("OBD") malfunction indicator light ("MIL"), *even if the primary function of the component is not emissions control*. The California Code of Regulations mandates that the purpose of the MIL is to notify the driver of defective malfunctions of the OBD monitored systems of the vehicle which affect emissions; and/or failures which will cause a vehicle to fail a smog test as mandated by the California Health and Safety Code.

48.    On information and belief, VW as a matter of custom and practice has failed to identify as covered components all parts which *can or are* required to illuminate the MIL, including the Piston. Furthermore, VW has failed to identify all components whose failure affects a regulated emission, including the Piston.

49.    VW has the ability to determine what component failures result in the MIL illuminating, as described below. Furthermore, California Code of Regulations Section 1968.2 specifically mandates that the MIL should not illuminate unless there is an emissions-related defect, and the regulations mandate that if a component's failure can or does cause the MIL to illuminate, coverage under the California Emissions Warranty follows. Yet, VW does not provide the required coverage.

50.    The CARB Declaration also repudiates any contention by VW that to be considered an "emission-related" component under the California Emissions Warranty, the component must be part of VW's narrow definition of the components which comprise the "emissions control system."

///

///

## THE PISTON IN CLASS VEHICLES
## IS AN EMISSIONS-RELATED PART

51.     In order to prove that the Piston is a high-priced part under the
Regulations, Plaintiff must first establish that the part is "emissions-related."

52.     The Piston is a "warranted part" pursuant to 13 California Code of
Regulations § 2037(b)(2) because it satisfies any and all of the regulatory
prerequisites identified above: a defect or failure in the Piston will cause the
"check engine" light to illuminate; will cause an increase in the output of
"regulated" greenhouse gas emissions; and/or will cause the vehicle to fail a smog
check.

### A Defect in the Piston Can Trigger
### an Emissions-Related OBDII Fault Code

53.     The Class Vehicles are equipped with an OBDII onboard diagnostic
system. The system uses sensors to gather data which is evaluated using OBDII
fault code logic. If the OBDII fault code logic determines that the data is outside
of an acceptable range, a fault code is triggered, identifying a defect which
increases regulated emissions. When VW seeks certification of vehicles for
distribution in California, VW is required, pursuant to 13 CCR 1968.2, to provide
CARB with all of VW's OBDII fault codes and the corresponding logic.  The fault
codes for VW's vehicles are identified in a document entitled "OBD2 Summary
Tables."  VW submitted OBD2 Summary Tables or similar documents to CARB
for every Class Vehicle and for every model year that the vehicles were certified
for sale in California.

54.     The "OBD2 Summary Tables" identify the Components/Systems
monitored by OBDII, the acceptable ranges relating to the data gathered, the
corresponding emissions fault codes and that the MIL will be triggered when a
defect is identified.  The purpose of the OBDII system, as confirmed in the CCR,
is specifically to monitor emissions-related components. This is why VW is

required to develop a compliant OBDII system which identifies emissions related defects, triggering a fault code and a MIL. The fault codes are used to assist technicians in repairing vehicles, whereas the MIL is used to alert the driver of a defect. This means that every defect that triggers the emissions fault codes identified by VW in the "OBD2Summary Tables" and the MIL is, by definition, an emissions-related defect.  The OBD2 Summaries, among other documents, identify the parts that have wrongfully not already been identified as emissions parts by VW in its warranty books but which, when defective, can or do trigger an emissions fault code and result in illumination of the MIL.  Therefore, VW is required to cover under the California Emissions Warranty any defect that can or will trigger a fault code identified by VW in its OBD2 Summaries submitted to CARB or that should properly be identified on the OBD2 Summaries because such a defect affects regulated emissions.

55.    As further described below, a defective engine Piston can and often will result in both a MIL and a fault code, due to the OBDII system detecting engine misfires and due to the OBDII system detecting improper data readings from the exhaust fumes which are flowing through the exhaust system and coming into contact with OBDII sensors.  As previously alleged, the MIL only illuminates when the OBDII system receives data indicating a defect in an emissions related part. The OBDII uses sensors to gather data which is evaluated using the OBDII's fault code logic. If the OBDII logic determines that the data is outside of an acceptable range, a fault code is triggered—which means that the OBDII has identified an emissions related defect. Therefore, the Piston is an emissions-related part because a defect in the Piston can trigger an emissions fault code that causes the MIL to illuminate.

56.    It is Plaintiff's information and belief that VW's own documents, including VW's OBDII summaries submitted to CARB as part of the vehicle certification process, identify the specific fault codes relating to the engine Piston

that directly correlate with increased emissions and confirm an emissions-related defect. Also, as confirmed by VW's OBDII summaries, these fault codes cause the OBDII MIL to be illuminated. The fault codes identified in VW's OBDII summaries confirm that there is a defect relating to an emissions related part. The OBDII fault codes that can be triggered when the engine Piston is defective include: P0300, P0301, P0302, P0303, P0304, P0305 and P0306, all relating to engine cylinder misfire. All of these OBDII fault codes will trigger a MIL. Defective engine Pistons can also trigger other OBDII fault codes which will also cause a MIL.

57.    While this litigation focuses on the Piston, the foregoing analysis also addresses and precludes any potential "slippery slope" argument or concern that every vehicle part could potentially be "emissions-related."  This litigation is not dependent on the assertion that "Emissions-related parts" are defined as every part in the OBDII system.  Rather, this litigation asserts that there should be California Emissions Warranty coverage, at the very least, for the Piston (and/or for all parts, components or systems whose defects trigger fault codes identified on the OBD2 Summary Tables and cause the MIL to be illuminated as set forth in the OBD2 Summaries.  The Piston is one such part.)  This is because said parts are undeniably "emissions-related" and fails in a manner that increases regulated emissions.  VW knows which fault codes trigger illumination of the MIL because VW is responsible for making sure that the vehicles it distributes in California have CARB compliant OBD2 systems and because VW is required to provide to CARB all the fault codes that trigger a MIL and the specific emissions-related conditions that trigger the fault codes as set forth in the OBD2 Summaries. Further, as confirmed in the CARB Declaration, emissions-related parts include any components that "can" or are required to illuminate the MIL in the event of a malfunction, even if the primary function of the component is not emissions control.

58.    Section 2037(b)(2) states, in relevant part, that vehicle manufacturers must warrant that the vehicle is "Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs."  VW failed to comply with his provision.  A defect in materials or workmanship relating to the Piston installed in Class Vehicles results in the triggering of an OBDII fault code, and/or results in the illumination of a check engine light and/or malfunction indicator lamp (MIL) as defined in the California Code of Regulations, thereby increasing regulated emissions.

### A Defect in the Piston Affects Regulated Emissions

59.    A defect in the Piston directly affects regulated emissions as follows: Gas is stored in the vehicle's gas tank. When a vehicle's engine is started, gas is pumped from the gas tank by one or more Pistons to the fuel injectors. The fuel injectors shoot gas into the combustion chambers where the gas mixes with air. Engine pistons slide up and down inside the combustion chambers. The combustion chambers are sealed air tight chambers. During the compression cycle of the engine, the engine's pistons inside the combustion chamber slide upwards, compressing the gas and air inside the combustion chamber. Proper compression is necessary in order for a gas engine to run properly. Once the pistons slide up into the combustion chambers, compressing the gas and air, spark plugs create a spark which ignites the gas and air, causing explosions. The energy from the explosions violently thrusts the pistons downwards, which turns the crankshaft which is connected to the pistons. The spinning of the crankshaft is transferred into the transmission and ultimately spins the tires, which allows the vehicle to

1    move forward or backward.  The combusted gas and air, also referred to as

2    exhaust, are expelled through the vehicle's exhaust.

3        60.    A defective cracked engine Piston will cause major performance and

4    drivability issues, will increase regulated emissions and will reduce fuel

5    efficiency.  This is because a defective engine Piston will result in reduced gas and

6    air compression. Reduced gas and air compression reduces the force of the

7    explosion, decreasing the usable energy produced from the engine from a

8    particular amount of air and gas. Furthermore, gas and air will leak outside of the

9    combustion chamber through the engine Piston defect. The gas and air that leaks

10   out of the combustion chamber will be wasted and will not ignite, increasing fuel

11   consumption and decreasing fuel efficiency. Furthermore, engine oil from the

12   engine crank case will enter the combustion chamber through the defective engine

13   Piston, causing oil to burn, also increasing emissions. Additionally, a defective

14   engine Piston will cause engine misfires which also increase fuel consumption and

15   reduce engine efficiency. Accordingly, the engine Piston is a "warranted part" as

16   defined by 13 California Code of Regulations § 2037(b)(2) because a defect or

17   failure in the engine piston will cause an increase in regulated emissions.

18                          **Emissions-Related Parts List**

19       61.    Similar to 13 California Code of Regulations section 2035, 13

20   California Code of Regulations Section 2601(i) states that an "'Emissions-related

21   part' means any vehicle part which affects any regulated emissions from a vehicle

22   that is subject to California or federal emissions standards and includes, but is not

23   limited to, those parts specified in the 'Emissions-Related Parts List,' adopted by

24   the State Board on November 4, 1977, as last amended June 1, 1990."

25       62.    Similarly, 13 California Code of Regulations Section 1900(b)(3)

26   states that "'Emissions-related part' means any automotive part, which affects any

27   regulated emissions from a motor vehicle which is subject to California or federal

28   emission standards. This includes, at a minimum, those parts specified in the

'Emissions-Related Parts List,' adopted by the State Board on November 4, 1977, as last amended June 1, 1990."

63.    The "Emissions-Related Parts List" is articulated in CARB's letter of June 1, 1990, which states that "The following list of components are examples of emission related parts as defined in Section 1900(b)(3), Chapter 3, Title 13, California Code of Regulations." Emphasis added. Therefore, VW is required to cover as "emissions-related" parts under the California emissions warranty (in addition to the Piston), any vehicle part specifically identified in CARB's letter of June 1, 1990.  As confirmed in CARB's letter of June 1, 1990, and in the Regulations, "emissions-related parts" are not limited to the emissions control system only.

64.    Engine Pistons should be covered under the California emissions warranty because these parts when defective increase regulated emissions as alleged herein, because these parts when defective can trigger a MIL and because *engine Pistons are explicitly identified as emissions-related parts in CARB's letter of June 1, 1990.*  CARB's letter of June 1, 1990 lists "Pistons" as emissions related parts.

## THE PISTONIN CLASS VEHICLES IS
## A HIGH-PRICED WARRANTED PART

65.    As part of the certification process for a vehicle, the manufacturer determines which parts it considers to be "emissions parts" and submits a list of those parts to CARB. Section 2037(c). At the same time, the manufacturer also identifies the parts from the emissions parts list that the manufacturer has determined, based on the cost calculation set forth in the California Code of Regulations, exceeds the cost limit and therefore are "high-priced" parts entitled to extended 7- year/70,000-mile coverage.

66.    California Code of Regulations Section 2037(c)(1) states that in calculating whether an individual replacement cost at the time of certification

exceeds the cost limit, "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis." Similarly, Section 2037(c)(2) states that "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis."

67.    On information and belief, VW has never identified any of the Pistons installed in Class Vehicles in Class Vehicles as emissions-related parts for which it does a high-priced cost analysis. Regardless, all of the engine Pistons installed in any and all of the Class Vehicles are inarguably comprised of parts which all are high-priced parts.  This because, when using the methodology required by the California Code of Regulations to calculate the cost of replacing one or more engine Piston installed in any Class Vehicle, the cost is always *greater* than $750, which is the cost threshold.  For any Class Vehicle, the number of labor hours required to replace any engine Piston installed in any Class Vehicle, exceeds 10 hours, and the applicable average labor hour rate has always exceeded $75.00.  However, the high-price cost limit has *never exceeded* $750. Thus, the cost of replacing any and all engine Pistons installed in any and all of the Class Vehicles always exceeds the cost limit, and the Pistons installed in Class Vehicles are therefore "high-priced" parts.

68.    The replacement cost of each of the Pistons installed in Class Vehicles exceed $750 and have exceeded $750 for the entirety of the time period relevant to this case. The high-cost limit has never equaled or exceeded $750, and thus, the cost of diagnosing and repairing the Pistons installed in Class Vehicles have always exceeded the high-cost limit for all Class Vehicles in all model years.

## INJUNCTIVE AND DECLARATORY RELIEF

69.    Future injunctive relief is necessary because there is an imminent likelihood of future harm. Specifically, due to the extremely technical nuances of the CCR, due to a total lack of knowledge on the part of consumers with regard to how to determine if a part is an emissions related warranted part, due to a total

1  lack of knowledge on the part of consumers relating to the information necessary

2  in order to calculate if a part is high-priced (because the analysis is supposed to

3  use a historical hourly rate in the highest cost metropolitan area in California, use

4  a formula based upon the consumer price index, use a historical part cost, etc), it is

5  simply not realistic that consumers will have any awareness of VW's obvious

6  wrongful conduct.  Without an injunction to, *inter alia*, compel VW to cover the

7  Piston under the California Emissions Warranty, Plaintiff and consumers generally

8  will not be able to compel VW to cover the repair under warranty.

9        70.    Further, VW is systemically continuing to fail to properly identify all

10  parts that should properly and correctly be covered under the California Emissions

11  Warranty as emissions-related parts and as high-cost. These parts include the parts

12  identified in the "OBD2 Summaries" (also referred to as "OBDII Summaries")

13  and parts that increase regulated emissions that are not currently covered under

14  VW's California Emissions Warranty.

15        71.    Due to VW's continuing conduct, Plaintiff is unable to rely on VW to

16  properly identify all the parts that should properly be covered under the California

17  Emissions Warranty and thus Plaintiff will have no way of knowing in the future

18  whether VW, in fact, is complying with the California Emissions Warranty as

19  required. Absent injunctive relief, Plaintiff will not know whether it makes sense

20  to spend his money on another VW vehicle on account of VW's noncompliance

21  with the California Emissions Warranty and Plaintiff will have to deal with the

22  same sort of warranty coverage issues again, and, if Plaintiff does purchase

23  another VW vehicle, Plaintiff might reasonably, but incorrectly, assume that VW

24  complied with all the requirements of the California Emissions Warranty, when it

25  did not. To the extent that Plaintiff does not purchase another VW vehicle, it will

26  be because, at least in part, he is unable to rely on VW to comply with the

27  requirements of the California Emissions Warranty.

28  ///

72.     Plaintiff's primary goal on behalf of members of the Class is to
obtain injunctive relief requiring VW to comply with the California Emissions
Warranty and declaratory relief with respect to the proper interpretation of the
California Emissions Warranty and VW's obligations pursuant to the CCRs and
the California Emissions Warranty. Plaintiff's claim for monetary relief is
secondary to Plaintiff's claim for injunctive or declaratory relief. Even in the
absence of possible monetary recovery, Plaintiff would bring this action to obtain
the injunctive and declaratory relief sought. Any monetary relief that would flow
to the members of the Class would be ancillary to the injunctive or declaratory
relief obtained.

73.     Therefore, Plaintiff seeks injunctive relief and/or declaratory relief
pursuant to 28 U.S.C. section 2201 that VW is in violation of, and must comply
with, the California Emissions Warranty namely, that VW, *inter alia*, identify and
cover the Piston under the California Emissions Warranty.

74.     On behalf of the members of the Class, Plaintiff seeks injunctive
relief requiring VW to comply with the California Emissions Warranty. This
includes that VW, *inter alia*, identify and cover under the California Emissions
Warranty the Piston and all of the parts, components or systems that should have
been properly covered under the California Emissions Warranty, and/or that
should be properly covered under the California Emissions Warranty on a going
forward basis, as emission-related parts, including without limitation, the parts,
components or systems identified in VW's own OBD2 Summaries provided to
CARB for each Class Vehicle, as described herein.

75.     On behalf of the members of the Class, Plaintiff seeks declaratory
judgment/relief pursuant to 28 U.S.C. section 2201 et seq as to, inter alia, (1) that
VW has used, and continues to use, the wrong or incorrect standards for
identifying the Piston under the California Emissions Warranty and "high-priced"
parts under the California Emissions Warranty; (2) that VW failed and is failing to

properly identify and warrant under the California Emissions Warranty the Pistons that should have been properly covered for emissions-related defects as identified, *inter alia*, per the fault codes on the Class Vehicles OBD2 Summaries described herein, and per CARB's letter of June 1, 1990 and/or, (3) that Plaintiff and members of the Class are entitled to warranty coverage under the California Emissions Warranty for the Piston not properly identified as both warranted parts and high-priced warranted parts under the California Emissions Warranty as described or defined herein.

76. Further, the harm suffered by Plaintiff and members of the Class and perpetrated by VW, is not adequately compensable with damages. The entire purpose of the California Emissions Warranty is to protect the environment. The California Emissions Warranty was enacted by the State of California to restrict harmful greenhouse gas emissions from gasoline and hybrid gasoline engines. The fundamental purpose of the emissions requirements is to reduce emissions, limit fuel consumption and increase fuel efficiency, by forcing manufacturers to repair and/or replace failed emissions-related vehicle components under warranty, thereby decreasing greenhouse gas emissions, including carbon dioxide emissions.

77. Indeed, motor vehicle use is the single greatest source of U.S. air pollution and is the cause of more air pollution than any other human activity. (Cars, Fuels, and Clean Air: A Review of Title II of the Clean Air Act Amendments of 1990 (1991) 21 Envtl. L. 1947, 1949). Many of these pollutants consist of hydrocarbons and nitrous oxides which react to form photochemical oxidants in the atmosphere. The most notorious of these photochemical oxidants is ozone – the primary component of urban smog. (California Air Resources Bd., Staff Report: Proposed Regulations for Low-Emission Vehicles and Clean Fuels (Aug. 13, 1990) at p. 3). Cars also produce nearly two-thirds of all carbon dioxide emissions. Carbon dioxide content in the atmosphere is closely linked to global temperature because the temperature of the Earth is primarily determined by the

balance between its absorption of energy from the Sun, and the reflection of a
portion of this energy back into space. Carbon dioxide – a greenhouse gas – traps
the energy and heat which would have otherwise escaped back into space, and re-
emits it, causing the warming of our atmosphere. This process is known as the
"greenhouse effect."

78.     Therefore, the State of California highly regulates emissions from
gasoline and hybrid gasoline engines, specifically greenhouse gas emissions. In
September 1990, pursuant to its broad authority to regulate and reduce
environmentally harmful vehicle emissions under Health and Safety Code §§
43013(a) and 43205, CARB submitted, and the Legislature adopted, California
Code of Regulation §§ 2035, et seq., which requires all manufacturers to provide a
statutorily compliant emissions warranty to all vehicles distributed and registered
in California.

79.     In September 2004, CARB approved the "Pavley" Greenhouse Gas
Regulations to control greenhouse gas emissions from new LEV II vehicles
beginning with the 2009 model year. These Greenhouse Gas Regulations added
four greenhouse gas air contaminants to the vehicular criteria and toxic air
contaminant emissions that California was already regulating –carbon dioxide
(CO2), methane (CH4), nitrous oxide (N2O), and hydrofluorocarbons (air
conditioner refrigerants). The State and federal government have specifically
focused on regulating greenhouse gas emissions, including carbon dioxide
emissions. If a gas vehicle has a defect which increases fuel consumption, that
defect increases carbon dioxide emissions.

80.     Notwithstanding State and federal regulations designed to protect our
air, monitoring shows that over 90 percent of Californians breathe unhealthy
levels of one or more air pollutants during some part of the year. Despite CARB's
best efforts, in 2020, "there were 157 bad air days for ozone pollution—the
invisible, lung-searing gas in smog—across the vast, coast-to-mountains basin

spanning Los Angeles, Orange, Riverside and San Bernardino counties. That's the
most days above the federal health standard since 1997." (Barboza, Tony (Dec. 6,
2020) L.A. Began 2020 With A Clean-Air Streak but Ended with Its Worst Smog
in Decades, Los Angeles Times [https://www.latimes.com/42alifornia/story/2020-
12-06/2020-laair-quality-southern-california-pollution-analysis].) One of the
reasons that our environment is in such a state of crisis is that corporations are not
following our very thoroughly formulated rules.

81.    Accordingly, damages are inadequate to compensate for the
foregoing harms caused by VW's violation, and continuing violation, of the
California Emissions Warranty. Money damages will not fix the harm caused by
Defendant's violation of emissions laws, which requires equitable relief.

82.    Further, VW and car manufacturers should not be able to shirk their
legal responsibilities simply by paying damages. Simply paying off consumers
undermines the entire purpose of the California Emissions Warranty and will
leave VW in the position of being able to continue to violate the law and increase
harmful vehicle emissions by just paying damages. Ironically, this result will leave
Plaintiff and members of the Class in an even worse position than by simply
receiving monetary compensation alone.

83.    Moreover, payment of damages does not ensure that the emissions
parts will actually be repaired. That result will only be ensured by forcing VW to
cover the repair under the California Emissions Warranty as required.

84.    Further, equitable relief is required because damages alone will not
be sufficient for Class members to identify all parts whose defects result in fault
codes identified in the OBD2 Summaries being triggered. Only VW has done the
analysis and knows the fault code logic that would allow for identification of all
required fault codes to CARB and all parts that give rise to those fault codes so
that those parts can be identified and properly covered under the California
Emissions Warranty. In effect, Plaintiff's request for equitable relief is the only

way to get VW to do what it is required to do.

85.    Plaintiff's proposed Injunctive and Declaratory Relief Subclass seeks injunctive and/or declaratory relief only, which are the primary goals and focus of this action and does not seek monetary relief.

86.    Plaintiff's request for injunctive, declaratory relief and other relief as described herein is not limited to just California purchasers of Class Vehicles and includes vehicles registered in other states that have adopted California the California Emissions Warranty for vehicles. These other States also have adopted California's Low-Emission Vehicle (LEV) criteria pollutant and greenhouse gas (GHG) emission regulations and Zero Emission Vehicle (ZEV) regulations under Section 177 of the Clean Air Act, 42 U.S.C. §7507 and also would be included. These states are identified as "Reg. 177 States" or "Section 177 States.")

87.    Defendant's warranty representations arise out of California law that Defendant has chosen to apply outside of California to the vehicles in the Section 177 States listed. Accordingly, Defendant's conduct was specifically intended to have effects outside of California and was specifically intended to apply to vehicles and members of the Class in those States that Defendant chose to include by the express terms of the California Emissions Warranty.

88.    Under these unique circumstances, California has a specific interest in regulating conduct outside of California that specifically invokes California emissions requirements and California emissions regulations and has an interest in preventing illegal practices that involve breach of California Emissions Warranty law that Defendant has chosen to invoke outside of California in the States covered by the Registered Vehicle Class. As Defendant seeks to apply the California Emission System Warranty to members of the Class and vehicles in the listed States outside of California, members of the Class in those States likewise should be included in a claim that seeks to vindicate their rights under that same warranty in California and should have the ability to have their rights under that

1    warranty asserted in California and pursuant to California law.

2         89.    VW's own express application of the California Emissions Warranty

3    constitutes a sufficient connection between California and out-of-state potential

4    Class members. Further, VW's misconduct, namely, VW's failure to identify all

5    emissions-related warranted parts to CARB, a California regulator, occurred in

6    California, and even out-of-state purchasers were harmed by VW's conduct that

7    occurred in California. VW failed to disclose, in its submissions to CARB, the

8    parts that are properly covered by the California Emissions Warranty.

9         90.    As alleged herein, VW is solely responsible for selecting and

10   identifying to CARB all of the parts that should be classified as emissions

11   warranted parts, including the Piston, and VW failed to include the Piston and

12   other components. Californians and out-of-state potential Class members in the

13   additional States covered by the California Emissions Warranty suffered an

14   identical harm – they were forced to pay the costs of repair or replacement for

15   parts that should have been covered under the California Emissions Warranty.

16        91.    Under these unique circumstances, California has the greater interest

17   in applying California's consumer laws to enforce compliance with the California

18   Emissions Warranty than the other States have in using their consumer laws to

19   enforce the same Regulation. California has a specific interest in regulating

20   conduct outside of California that specifically invokes California emissions

21   requirements and regulations, and California has an interest in preventing illegal

22   practices that involve breach of California Emissions Warranty law that Defendant

23   has chosen to invoke outside of California in the specific States covered.

24   California also has a supreme interest in applying its own consumer protection

25   laws in ensuring that the California Emissions Warranty is properly interpreted

26   and applied wherever VW has chosen to invoke it.

27        92.    Under the facts of this specific case, the law of California should be

28   applied because California's interest would be more impaired if its consumer laws

to enforce the California Emissions Warranty were subordinated to consumer laws of the other States to which VW has chosen to apply the requirements of the California Emissions Warranty. Other jurisdictions' interests in applying their own consumer protection laws to their own residents do not strongly outweigh the interest California has in applying its consumer protection laws to enforce the California Emission Warranty with respect to the specific potential out-of-state members of the Class identified herein. Therefore, the Classes alleged herein include persons who purchased or leased Class Vehicles that are registered in States other than California.

93.    There is sufficient similarity among all the Class Vehicles and VW's conduct as defined herein in that, among other things, all of the vehicles in the proposed Classes are subject to the same California emissions warranty and the same requirements that VW report all emissions-related components to CARB pursuant to the California Code of Regulations. VW has acted in a uniform manner with respect to all Class Vehicles by failing to properly cover engine Pistons installed in the Class Vehicles as required under the California emissions warranty and as described herein.

94.    In sum, there are multiple clear nexuses between California and the other states: each state at issue chose to use California's Emissions Warranty law; VW chose to incorporate California's emissions warranty into its warranty in other states; and VW allegedly made misrepresentations to California's regulator, CARB. Further, there is no credible contention that these other states would choose to apply their own consumer protection law in this situation, given that they have already chosen to piggyback off California's consumer protection law. California and the other states each have an interest in having California's law interpreted correctly: their interests are not in tension, and even if they must be balanced, California's outweighs the other states.

///

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

95.   Plaintiff re-alleges and incorporates by reference each allegation set forth above.

96.   Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(2), (b)(3) and (c)(4) on behalf of himself and members of the Class as defined below.

97.   Plaintiff's proposed Classes consist of and are defined as follows:

California Class and Subclass:

> All persons in the State of California who have been owners or lessees of VW, Audi, Bentley, Bugatti and Lamborghini vehicles ("Class Vehicles") whose Pistons are not covered for 7-years or 70,000-miles (the "California Class").

> All persons in the State of California who have been owners or lessees of California Class Vehicles who have paid for repairs and parts pertaining to defective Pistons which occurred prior to 7-years or 70,000-miles (the "California Out-of-Pocket Subclass").

Reg. 177 Class and Subclass:

> All persons who have been owners or lessees of Class Vehicles in a State other than California, which, in the year their vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States) and whose Pistons are not covered for 7-years or 70,000-miles (the "Reg. 177 Class").

> All persons who have been owners or lessees of Class Vehicles in a State other than California, which, in the year their vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States) and who have paid for repairs and parts pertaining to defective Pistons which occurred prior to 7-years or 70,000-miles (the "Reg. 177 Out-of-Pocket Subclass").

> Excluded from the Classes and Subclasses are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their

immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing. Also excluded are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

98.    As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual members.  Among the common questions of law and fact include:

(a)    Whether VW has failed, and is failing, to comply with the California emissions warranty by failing to provide a 3-year 50,000-mile California Emissions Warranty coverage for the Piston pursuant to the CCR.

(b)    Whether VW has failed, and is failing, to comply with the California High-Cost Emissions-Related Parts Warranty by failing to provide a 7-year 70,000-mile California emissions warranty for the pursuant to the CCR.

(c)    Whether VW has failed, and is failing, to identify for consumers and dealerships that the Piston should be identified as California emissions warranty parts, and thus covered by the 3-year 50,000-mile California emissions warranty.

(d)    Whether VW has failed, and is failing, to identify for consumers and dealerships that the Piston should be identified as high-priced warranted parts, and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(e)    Whether VW's conduct of failing to identify that the Piston should be identified as California emissions warranty parts and thus covered by the 3-year 50,000-mile California Emissions-Related Parts Warranty results in consumers suffering financial loss.

(f)     Whether VW's conduct of failing to identify that the Piston should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty results in consumers suffering financial loss.

(g)     Whether VW has engaged in, and is engaging in, unlawful and unfair business practices in violation of California Business & Professions Code section 17200, *et seq.* with regard to VW's failure to identify that the Piston should be covered by the 3-year 50,000-mile California Emissions-Related Parts Warranty.

(h)     Whether VW has engaged in, and is engaging in, unlawful and unfair business practices in violation of California Business & Professions Code section 17200, *et seq.* with regard to VW's failure to identify that the Piston should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(i)     Whether Plaintiff and Class members are entitled to injunctive relief regarding VW's failure to identify that the Piston should be covered by the 3-year 50,000-mile California Emissions-Related Parts Warranty.

(j)     Whether Plaintiff and Class members are entitled to injunctive relief regarding VW's failure to identify that the Piston should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(k)     The appropriate amount of restitution, or monetary penalties resulting from VW's violations of California law.

99.     <u>Numerosity</u>:  As required by Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that joinder of all Class members would be unfeasible and impractical, and the resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court.  The membership of the

entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

100.    Typicality:  As required by Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of all Class members since Plaintiff and all members of the Class suffered damages as result of Defendant's concealment and wrongful conduct set forth herein.

101.    Adequacy:  As required by Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interests adverse or antagonistic to those of the Class and has retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Class to its conclusion

102.    Superiority:  As required by Fed. R. Civ. P. 23(b)(3), the nature of this action makes the use of class action adjudication superior to other methods.  A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

103.    Defendant keeps extensive computerized records of its customers. Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

104.    Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class.

///

///

1

## TOLLING OF THE STATUTE OF LIMITATIONS

2    105.   VW has actively engaged in misleading, and dishonest conduct
3    relating to its failure to properly identify the Piston as an emissions related parts
4    covered under the 3-year 50,000-mile warranty and as a high-priced warranted
5    part covered under the 7-year 70,000-mile California emissions warranty.  Despite
6    acting diligently, Plaintiff and the Class cannot be reasonably expected on their
7    own to learn or discover what parts and repairs should be identified as high-priced
8    and covered said California emissions warranties. Therefore, the discovery rule is
9    applicable to the claims asserted by Plaintiff and members of the Class, and the
10   statute of limitations for bringing the claims set forth herein should be tolled.

11   106.   VW has actual and constructive knowledge that it is violating
12   California law by failing to identify the Piston as a California emissions part
13   covered by the 3-year 50,000-mile warranty and as a high-priced warranted part,
14   covered by the 7-year 70,000-mile California emissions warranty. VW has
15   concealed from Plaintiff and members of the Class that VW is violating California
16   law as set forth herein.

17   107.   In addition, on information and belief, even after Plaintiff and
18   members of the Class contacted VW and/or its authorized dealers for vehicle
19   repairs to high-priced emission warranted parts, they were routinely told by VW
20   and its agents that the parts did not qualify for high-priced coverage under the 7-
21   year and 70,000-mile California Emissions Warranty law.

22   108.   VW was and remains under a continuing duty to disclose to Plaintiff
23   and members of the Class all of the parts and repairs for Class Vehicles that
24   should be identified as high-priced and covered under the 7-year and 70,000-mile
25   California Emissions Warranty. As a result of VW's wrongful conduct set forth
26   herein, any and all applicable statutes of limitations otherwise applicable to the
27   allegations herein have been tolled. VW's is further estopped from relying on any
28   statute of limitation because of its concealment set forth herein.

109.   Any applicable statute of limitation is tolled by VW's knowledge, active concealment, and wrongful conduct set forth herein.  VW is further estopped from relying on any statute of limitation defense because of its concealment set forth herein.

### FIRST CLAIM FOR RELIEF

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

110.   Plaintiff re-alleges and incorporates by reference each allegation set forth above.

111.   California Business and Professions Code section 17200, *et seq*. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." VW has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

112.   The UCL imposes strict liability.  Plaintiff need not prove that VW intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

113.   VW is a "person" as defined by Business & Professions Code § 17201.

114.   As a direct and proximate result of VW's acts and practices in violation of the UCL, Plaintiff and members of the Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

### Unlawful Prong

115.   A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct.

116.   The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

117.   VW failed to comply with the California Emissions Warranty requirements pursuant to the CCR by failing to provide 3-year 50,000-mile

warranty coverage, and 7-year 70,000-mile warranty coverage for the Piston installed in Class Vehicles. The California Emissions Warranty applies to all Class Vehicles.  13 CCR 2037(a). Pursuant thereto, manufacturers must warrant for 3 years or 50,000 miles that vehicles conform with the California Air Resources Board regulations and are free from defects which cause the failure of a warranted part to perform as described in the application for certification, including defects which would cause the vehicle's on-board diagnostic malfunction indicator to illuminate. 13 CCR 2037(b)(1)-(2). The vehicle manufacturer is VW, which is the manufacturer granted certification for the Class Vehicles. 13 CCR 2035(c)(5). The Piston is a warranted part. The warranty period shall be 7 years or 70,000 miles for high-priced warranted parts. 13 CCR 2037(b)(3).  High-priced parts warranted parts are those parts which, when taking into consideration the cost to diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR 2037(c)(3). CARB published memos which calculated the cost limit for model years 2011 through 2017. Although the Piston exceeded the cost limit for model years 2011-2017, VW has failed to provide 7-year 70,000-mile warranty coverage for the Piston for model years 2011 and 2017.  The failure has resulted in damage to Plaintiff and members of the Class. Furthermore, VW has failed to even designate the Piston as an emissions part, thus VW has failed to provide even 3-year 50,000-mile coverage for the Fuel Pump.

118.   Moreover, while Plaintiff does not yet know the specific information that VW did or did not provide to CARB with respect to the Piston for Class Vehicles, on information and belief, VW did not designate the part as an emissions related part, and did not designate the Piston as a high-priced warranted part that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.  Thereby, VW was able to avoid identifying the Piston as an emission related part and as a high-priced warranted part in the warranty books for the Class vehicles, which purports to identify all parts covered

under the 3-year 50,000-mile California emissions warranty and the 7-year 70,000-mile high-priced California emissions warranty. Thus, VW's violation of the CCR directly affected communications with consumers.  By violating the CCR, VW was able to avoid disclosing in the warranty books that the Piston is a high-priced warranted part.

119.   VW's acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.  Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

### Unfair Prong

120.   VW's conduct violates the unfair prong of the UCL.

121.   An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided.  An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions.  VW's conduct violates all of these definitions.

122.   As alleged above, VW engages and has engaged in a systematic business practice of intentionally failing to identify in its warranty booklet at the time of distribution, and in resources provided to its dealerships, numerous parts that VW is obligated to identify as warranted parts and high-priced warranted parts by operation of law, including specifically the Piston in Class Vehicles.  VW does this in an effort to reduce the amount of money that VW spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct.  If VW complied with California law and properly identified the Piston and all other California emissions related

parts and parts as warranted parts and high-priced warranted parts that should be identified as such, then VW dealerships would properly provide warranty coverage for said emissions related parts and high-priced warranted parts.

123.   Further, VW's conduct is unfair because it intentionally refuses to provide warranty coverage for the Piston for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be covered under the California emissions warranty. Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of VW's unfair business acts and practices as set forth in detail.

124.   VW's failure to properly identify the Piston and/or all parts as warranted emissions parts and high-priced warranted parts that should be identified as such, is a uniform, systematic, and intentional business practice on the part of VW to minimize the amount of money that VW has to pay out in warranty claims. This conduct violates California law.

125.   As a direct and proximate result of VW's acts and practices in violation of the UCL, Plaintiff and members of the Class have paid out of pocket to repair or replace the Piston and/or other parts that should have been covered under either the 3-year 50,000-mile emissions warranty or the 7-year 70,000-mile California emissions warranty.  Forcing consumers to pay out of pocket to repair or replace vehicle components that should be covered under warranty is clearly unfair.

126.   VW's conduct does not benefit consumers or competition. Plaintiff and members of the Class could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial.  VW's conduct only benefits VW, by VW wrongfully avoiding having to pay warranty claims which should be covered by the California emissions warranty.

///

127.   The gravity of the consequences of VW's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous.

128.   VW's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding California's Emission Control System Warranty Requirements, or is substantially injurious to the public, for the reasons set forth above.

129.   To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to VW's justification and motives for its conduct, and as to the impact of VW's conduct on Plaintiff and Class members.

130.   VW's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.  Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against VW as follows:

(a) An order certifying the proposed Classes, designating Plaintiff as named representative of the Classes, and designating the Plaintiff's Counsel as Class Counsel;

(b) A declaration that VW is financially responsible for notifying all members of the Class about the wrongful conduct set forth herein; that VW's conduct as alleged herein violates the California Emissions Warranty including, without limitation, that VW has used, and continues to use, the wrong or incorrect standards for identifying the Piston and other parts as "emissions-related" parts and "high-priced warranty parts" under the California Emissions Warranty; that

VW failed and is failing to properly identify and warrant under the California Emissions Warranty the Piston that should have been properly covered for emissions-related defects as identified, *inter alia*, per the fault codes on the Class Vehicles OBD2 Summaries described herein, and/or as high-priced warranty parts; and/or that Plaintiff and the members of the Classes are entitled to warranty coverage under California Emissions Warranty for parts described or defined herein.

(c) An order requiring VW to, *inter alia*, (1) review its warranty books for all Class Vehicles and properly identify and warrant the Piston as an "emissions-related part" and (2) recalculate for all such parts whether those parts, in fact, should properly be characterized as "high priced parts"; (3) on a going forward basis, use the proper standard for determining whether a part is "emissions-related" and "high-priced" warranted part under the California Emissions Warranty; (4) and enjoin VW from further deceptive distribution, sales, and lease practices, and to reimburse both Plaintiff and members of the Class for all out-of-pocket expenses, including diagnostic costs, that VW owners and lessees wrongly paid for Piston repairs that should properly have been covered by VW under the California Emissions Warranty and other amounts to which they may be legally entitled under the California Emissions Warranty;

(d) An award to Plaintiff and members of the Class of damages in an amount to be proven at trial;

(e) An award of attorneys' fees and costs as allowed by law and/or pursuant to California Code of Civil Procedure § 1021.5;

(f) An award of pre-judgment and post-judgment interest;

(g) Leave to amend the Complaint to conform to the evidence produced at trial; and,

///

///

1    (h) Other relief, including damages, as may be appropriate under the

2    circumstances.

3

4    Dated: February 27, 2023          Respectfully submitted,

5                                      **POMERANTZ LLP**
                                       **THE LAW OFFICE OF ROBERT STARR**
6                                      **FRONTIER LAW CENTER**

7
                                       By:_____/s/ Robert L. Starr_____
8                                              Jordan L. Lurie
                                               Ari Y. Basser
9                                              Robert L. Starr

10

11                                     *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28